May it please the court, Stephen Kinnaird for v. VrnetX. I begin with four points regarding statutory estoppel against Apple. First, in Fairchild, this court held that estoppel arises from its final validity decision, even if there is a remand, and no final judgment in the action as a whole. Without uttering the word, Apple effectively asked this court to overrule Fairchild because it did not explicitly consider the possibility of future Supreme Court review. Can I just interrupt you for a second? I'm sorry to interrupt you. What is the import of your argument in terms of the practical matters of this case? Because there's a Cisco re-exam too. So even if we were to agree with you on the finality issue, my understanding is we're still left with invalidity of the 211 patent, the claims in the 211 patent, but it takes away the stuff in the 504 patent, the claims in the 504? The 504, and then it would affect, there's certain unasserted claims that would have to go back for a remand, but the estoppel in the 504 Cisco re-exam does not involve the 504. And then, depending on how this court resolves, the Cisco 211. Right, Cisco was just on the 211. But the Cisco remains, even if we were to agree with you on the finality. That's right. So what I was about to say is that what Apple asked for is the province of an en banc court. And indeed, in Procopio, this court recently granted re-hearing en banc to revisit a statutory interpretation based on arguments. You're saying Fairchild maps, and so we could only, we would have. Yes, that's right. Fairchild says. What about Fresenius? I mean, the other side, I think, as I recall, argues that this is a cousin to Fresenius, and therefore Fresenius, which preceded Fairchild, ought to govern. Well, actually, I think they rely on more, they don't claim a conflict with Fresenius. They're just trying to adopt the rule of Fresenius. They're claiming a conflict with Boettcher. And there is no conflict. And I would also point out, this court, my second point was, Fairchild states the correct rule. An appeal to this court terminates when it issues the mandate, because that is what returns jurisdiction to the district court. And indeed, the PTO's regulation on PTAB appeals says an appeal to the U.S. Court of Appeals for the federal circuit, whether from a decision of the board or a judgment in a civil action, is terminated when the mandate is issued by this court, Regulation 1.197. There is no conflict with Boettcher as to when an appeal terminates. So even though Boettcher did not address Supreme Court review, Boettcher held that a decision under 315 was final when an appeal terminates under 316. And at 661, F3rd, 645, it embraced the rule that an appeal terminates when the court issues its mandate. And there's a PTO regulation on place there, too. It's 1.979B, an appeal terminates with the mandate. So no conflict with Boettcher. And my final point is... I'm back to Fairchild, though. Even though I assume we've all researched it, we know Fairchild was the same circumstance where we upheld some of it and then sent it back to the district court. But the court itself never addressed the second opportunity for a cert petition. That's right, but that doesn't... What do we do with that? I mean, I think the other side may argue, I'm not sure that that argument was never made to the court, so the court never had to address it. I frankly haven't gone back to the briefs to see whether or not that's correct. They didn't address the future possibility, but that requires en banc review, as in Procopio. The rule is that you can have a final decision even with no final judgment. Apple asks for the contrary rule, that there has to be a final judgment in order for there to be finality. So it doesn't matter whether all the arguments were made. That would upset stare decisis everywhere. But in Fairchild, the remand was not related to the patent. And here, we do have issues that are related to the patent. But that's not the question, Your Honor. The question is whether the... One of the reasons why the court in Fairchild found finality is that all the patent issues had been resolved. Right, but the question is, is the question of patent validity final? It doesn't matter what the other issues on remand, whether they're infringement of the same patent or they concern a different patent. That's just difference in facts. But the rule is, is the question, the determination of patent validity final? And that's true in both cases. So really, Fairchild is on all fours. And on patentability. I just wanted to ask you, I mean, so the one thing that caused me pause is as I think about collateral estoppel, race judicata, a million different issues, whether there's finality usually ends after mandatory appeals review. I guess, while maybe I agree with you that Fairchild is on all fours because Fairchild expressly says any unresolved issues on remand would have nothing to do, no effect on the now final 972 patent validity determination and that's true here too. But I guess I'm not 100% certain that time for certiorari has to be resolved in any instance, I mean, not just under the very speculative Mercer rule, but at all, because when I think about similar doctrines, whether it's collateral estoppel, race judicata, any kind of doctrine, finality is achieved when the time for mandatory appeals, meaning non-discretionary appeals, are resolved. So Fairchild may have gone further than even the law requires by saying the time for certiorari in that one instance has required. I guess I'm not, maybe I don't have the authority to change Fairchild at all and the time for certiorari expired just like it has here, but I'm not sure that's even exactly the right rule on a clean slate because when I think of analogies to all kinds of other areas of the law, finality is achieved after the appellate court resolution and you don't have to wait for a very speculative certiorari time period. Is that right? Absolutely right. Am I understanding? Issued preclusion is a rule of practical finality. It does not require finality in the action as a whole. So even on that ground, if Fairchild, the extent Fairchild says you even have to, you know, that it was relevant whether or not they petitioned for cert, I don't even know that that's necessarily has to be part of the whole thing. So this case is on all fours with Fairchild, but Fairchild may have even gone further than it needed to, but we sure don't need to move it all the way to the Mercer rule. Absolutely. And Congress did not intend, but the Congress knew that patent validity decisions, they almost invariably, they're fact specific, they're patent specific, almost never worthy of Supreme Court review. And they did not want to. Well, maybe they should then stop asking for GBR. Well, they did not want to encourage parties like Apple to clutter the Supreme Court docket with frivolous petitions just to run out the estoppel clock. Well, if that were true, then they wouldn't take these Apple cases. And on patentability, I begin with the Cisco EPR, and I'd like to address two quick procedural points before turning to the substance. First, at a minimum. It's not a, it's a re-exam. I'm sorry, I misspoke, re-exam. I'm sorry, I'm so confused by all these cases. I guess I am too, Your Honor. But on the Cisco re-exam, at a minimum, there must be a remand on claim 47 because the board never addressed a key argument there. And those are, claim 47 is an authentication claim. And in Lendenman, authentication requires a remote procedure call, or RPC. And Vernetics argued that the DNS equivalent in Lendenman, which is the CDS, does not use RPC. And the board did not have to resolve that in the independent claims, but it cannot declare 47, which is one of the underlying claims in the district judgment, unpatentable unless it resolves that point. Did, below, did Vernetics argue the claim 47 separately? Yes, it did. And when separately means you put it in a separate section, the regulation's quite clear in that. And Cisco is flat wrong that there's no separate, that that separate section of our appeal brief is ineffective simply because there's overlap with other arguments. Well, the board ended up, I think on this, appendix 88, it says the patent owner does not provide additional arguments in support of claim 47. Was that right or wrong? Well, there was a commonality of arguments, but they didn't address all the arguments. And any one of those arguments would have preserved 47. So they had to address claim 47. So what you do in the board, even if you have overlapping arguments, you have to, you can't group the claims together and then say, well, you gotta address 47. But if you isolate 47, they have to address the arguments, and that's what they didn't do. The second is that Cisco's argument that Vernetics waived all of its Lindenman claims because it did not appeal claim 48 is contrived. The examiner never relied on that portion of Lindenman, which is page 28, appendix 9574, for any of the other claims. Indeed, Cisco at 11611. I'm confused. I thought the board did respond to the Vernetics arguments about ACLs by explaining Lindenman teaches CDS and the security services are integrated. And when they affirmed on that alternative finding, I don't see why they needed to address RPCs after that. No, no, right. No, this is a different issue. They have a waiver argument in their brief. We didn't appeal 48, which is an unasserted claim. And that has a different kind of indication. It's actually an indication performed by the client software module, not the DNSS, so they couldn't have raised it. My only point is there's no, because it was never set forth as a ground of rejection for the independent claims, the fact that we didn't appeal it doesn't prevent us from getting to the merit. So I'd like to turn now to the fact that Lindenman does not disclose the claimed indication. So the essence of the invention here is that the DNS system automates secure communications links in processing network address queries. And so the key limitation. Just to be clear, are you now, I mean, there's so many issues here. Are you now turning to the 504 patent claims, 13660 and 211, 136 and 60, the indication limitations contained therein? Is that what you're doing now? No, it's the 211 and it's the Lindenman reference. And so it's the two basis for an indication is return of a network address and then the ACL issue. And so I wanted to address both of those. So you can see from the specification, for example, an appendix 248, which is figure 34, step 3410. That describes an indication. So you see the secure server accesses the gatekeeper, gets the parameter for the secure communications link, then communicates it to the client software module for use in establishing a link. And what you have in Lindenman is just purely conventional DNS. So in Lindenman, they say that just returning a network address for a server that might, subsequently, be part of a secure remote procedure call. I thought I understood, Cisco, to argue in this appeal that you are not challenging the board's separate finding that Lindenman's domain names with security-specific names disclose the claimed indication. And I thought I understood this to be a sufficient reason to affirm. Am I wrong? That was the point. That's claim 48. That's not a... Okay, I'm sorry. It's based on a part of Lindenman, page 28, that was never asserted. And I know it's very confusing, Your Honor, but it was never asserted for any of the other claims. And it wasn't even raised by Cisco for the other claims. So it's not a bar to considering. So this is page 21 of Lindenman. It's just a basic return of a network address that could be part, in the future, of a subsequent communication. We think those kind of conventional DNS functions are disclaimed, but even if you don't find disclaimer, one skilled in the art would not find that to be the kind of indication. It's not an indication that the DNSS itself supports establishing the secure link. And now I turn to the ACL, which is even more, I think, fragile of a holding. And the ACL is in Lindenman. It's on page 34, 9580, and it's worth looking at that because all the ACL does is determine whether a particular user is authorized to receive the name or the address for the name that it queries, and then to perform some CDS functions. Just being authorized to receive a name says nothing about whether that there even be secure communications, much less that the DNSS itself supports establishing the link. So I think that the board has to reverse their, Pravino, the two glaring errors, and I know I'm getting close to my, but the two glaring errors in Pravino is that the authentication claims require the DNSS actually to authenticate the query. It's not enough to have an authorization somewhere in the sequence of events that includes queries. And the board also made no findings that required, it's the de novo finder of fact here, even though it's an established record, made no findings as to what constitutes the DNSS, what's the basis for it, which of the four alternative indications are supported by the record. It's just not there. Was that, is that authentication issue dealing with exclusively Apple's case, Apple's re-exam, and not Cisco's? The authentication of the query is a Pravino issue for Apple. In 47, they didn't even reach, the only authentication claim there is the one that I mentioned at the outset where they didn't even reach it, and there needs to be a remand. But the authentication of the query issue is an Apple issue. So I'll reserve more time for rebuttal. You've used your rebuttal time, but we'll restore some of it. Now there's a division of time here. There is, Your Honor. 13 minutes for me and Mr. Foster, who do the Cisco re-exams. It's gonna take two minutes of our time. Okay. And I'll stay closely to that. And may it please the court, my name is Bill Lee, and together with my colleague, Brittany Amati, I represent Apple. Let me turn immediately to the Fairchild issue and part of the colloquy between my colleague and Judge Moore, because respectfully, traditional claim preclusion and issue preclusion principles are different than what was described to you. Tradition, claim preclusion, issue preclusion principles, the common law principles, attach at the time of a final judgment. So in a district court, if it reaches a decision, traditional issue preclusion and claim preclusion would attach at that time, even with appeals possible, whether to a court of appeals or beyond. That's why the legislative history of this statute and the interpretation of this statute in Vecher is so important. And Fairchild actually recognizes what Vecher's holding is. Well, so if that were true, then why shouldn't the statute be read consistent with that common law principle? You know, Mr. Lee, you know as well as I do, boy, this court gets itself in trouble whenever we create patent-specific rules that the statute does not demand of us. When there's an issue in our law that overlays nicely with issues in other areas of law and we'll re-reach a different result from those, we tend to get in trouble with the Supreme Court. So if we're not consistent in our understanding of preclusion issues, if we're inconsistent with mainstream law and preclusion, isn't that a problem? Absolutely not, Your Honor, because just as Fresenius recognizes, Congress can mandate different preclusive principles. Correct, but what in Congress's Section 317B mandated something different? They just said once a final decision has been entered against a party in a civil action, what about that language suggests to you or should suggest to me that Congress intended this preclusion to require more process, namely full appellate vetting and in your view, full Supreme Court certiorari in every possible way to have been exhausted before it becomes a thus final decision? Your Honor, I have an answer to that question and it actually has several different levels, but let me start with this. I'm sure it has three levels if I know you well, go ahead. I'm gonna make it three levels for purposes of this morning. The first is this, there is a legislative history to this statute and the legislative history explicitly says as we cite to you in our brief that the preclusion principles of Section 317B do not apply until all appeals have been terminated. That's the quote from the legislative history. Building upon that legislative history. What is that legislative history? Please enlighten me on the exact source of that. Let me see if I can give you actually the precise appendix so I can give it to you, Your Honor. No, what is it? Is it a Senate report? I believe so, yes. And let me see if I can pull it up very quickly. Let me just get you the precise page and let me finish the thought as I get the precise page. This is it from 32 of your brief? Yes, and Your Honor, what happened here is this, and I think this is the multiple levels to Judge Moore's question. The legislative history says this is a statutory preclusion regime. It only applies when all appeals have been terminated. The issue of what 317B arises in Boettcher. Boettcher interprets 317B consistent with the legislative history to say that it's only after all appeals have been terminated. Appeals, and it says nothing about certiorari. Well, Your Honor, search right is an appeal. Search right is an appeal. And then this is. It's not appeal as of right. So there's a basis for differentiating. Certainly the PTO thinks differently, right? I mean, we have Apple arguing to us in some instances the PTO should get deference. And here in the MPEP, they interpret this as limited to time for a federal circuit decision, and they expressly do not recognize certiorari. So does the PTO get deference in some instances, but not others? Actually, Your Honor, respectfully, it's the opposite. The PTO has a set of regulations that actually recognize specifically under 317B that certiorari or appeal from the Supreme Court is one of the things that could keep a decision from becoming a final. That's MPEP. No, the grant of certiorari or the time period? MPEP 2686.04 Roman Normal 5A refers to judicial decisions as being not final so long as any time for appeal remains from a district court or the Supreme Court. Okay, I stand totally corrected. I stand totally corrected. I get it, you're right, 100%. So, Your Honor, if I go back. PTO is consistent. The PTO has been consistent. And that actually would be the last of my three layers. But really, what we have here is we have the statute, we have the legislative history that basically- But you still didn't tell me what is this legislative history? I still don't have an answer from you on it. It's the congressional record, Your Honor. Yeah, there's a lot of stuff in the congressional record. There is, and it's a portion at 2927- That doesn't tell me what it is. It doesn't look to me like a Senate report. Is it a hearing? It's just, you know, I don't have the precise- Yeah, but you know, legislative history has various levels of credibility that ought to be attached to it, right? A Senate report or House report is one thing, and a random statement, like you could go testify before Congress, right, and make a statement in it, and it would be in the congressional record. So, is this Bill Lee on patents? I mean, what is this statement that you're telling me I should give? Isn't it Senator Kyle's statement? I believe it is, Your Honor. I just don't have it in the- There was a hearing and not a report. There was a hearing- So, a hearing statement by an individual senator, would you agree with me that that is entitled to less weight, for example, even among those who might be attending, to give credit to legislative history, less weight than, say, a Senate report? Actually, Your Honor, what I would suggest to you is- No, no, I asked you a simple question. Would you agree with me that a statement by a single senator in a hearing is entitled to less weight by a court than a Senate report, for example? The answer to Your Honor's question is yes, and then the additional answer is this. When you have Senator Kyle's statement that it's only applicable after all appeals have been terminated, when you have the panel of this court in Betcher say it's only after all appeals have been terminated, when you have this court in Function Media and Fairchild saying that the holding of Betcher is that the finality only applies when all appeals have been terminated, you have a consistent, entirely consistent interpretation of the statute, and then you have, on top of that, the third layer is the NPEP, which specifically, as we talked about, refers to appeals from the federal circuit, and also motions for reconsideration to the federal circuit. But this Mercer rule that you would like to hang so much on would have applied equally in Fairchild, would it not? No, Your Honor, because in Fairchild, there are two important distinctions, one of which Judge Rainier mentioned, which is the question of what was on remand. But what happened in Fairchild is the parties explicitly represented to the motion panel that the time for certiorari had run. There was a letter filed with the court in which the parties represented that. Yeah, but that representation had to do with the first appeal, not the remand. Yeah, so we all, but don't you assume that we understood that that's what they were talking about, just the period for certiorari on the first appeal? Yeah, I think, Your Honor, reading the letter fairly, that's what they were talking about. Then no one raised the question of you still could obtain certiorari or a petition for certiorari after the second appeal. And that kept it from being final. When we say no one, one of the parties would have then raised the argument. But can't we safely assume that we could have figured that out too? Well, Your Honor, you could have, but also this court, in many cases, takes the issues that are presented to them, takes the representations that are made to them, and decides the issue. So you think that we as a panel could fairly differentiate Fairchild because the second period for cert, which also existed potentially in Fairchild, precisely as it does here, has not run that we could get away with the panel with limiting Fairchild? Yeah, Your Honor, the answer to your question is yes. And the reason is it's the same thing you did in the national cable television case about 20 years ago, which is there's a distinction between the court having decided a legal principle that basically decides a broad set of issues and a court having decided the specific issue that's before the court today. You were not asked to decide that second issue. And in the discussion I've had with Judge Moore, the premise of 317B is when you have two competing proceedings, and Fresenius recognizes that you can have two competing proceedings, before one can trump the other, before one can be dispositive of the other, it has to be over, and it's not over till it's over. And that's what 317B is talking about. So if this case goes back, it takes three years, which indeed it has, to come back up to us, let's assume it settles in the interim. So does that mean that the 317B never kicks in because there's been a settlement of that case before the second petition could have been filed? Your Honor, the answer is yes, and in the same way that if the case were remanded, when the first case was remanded after the first opinion by this court in 2014, as it was in the district court getting ready, it was retried, and it was retried again, and if it settled at that point in time, would the decision not have been final? The answer is yes. And the first principle behind all of this is it's not over till it's over, and we're not gonna have a proceeding of one form basically be dispositive of another until it's over. Well, even though validity is largely over, entirely over. It's not entirely over, Your Honor, because we had the right to petition for cert. We would have had that right. And just to be clear, because I think that this particular case really magnifies the impact of the rule that you're requesting. So this litigation was filed in 2010, and the re-exam requests were filed in 2011. It's now 2019. Unless I'm mistaken, you're asking me to remand, for example, on damages in the litigation, correct? Correct? In the next appeal, yes. In the litigation. You want me to remand on damages. So if I were to remand on damages and have a whole new trial like you requested, probably that case with appeals and everything else would continue another four to five years. So we'd be looking at 2024, and I'm sure you would find a reason if they jury awarded against you that there should be yet another new trial, because this would be the third or fourth, having trouble keeping track. So in any event, so your proposal would result in no finality for, in this case, 14 years, 15 years? Even though validity has long since been decided and affirmed by our court 10 years ago. Your Honor, let me respond to that very directly, and also tied to Fairchild. The first, if it were back here in 2024, it would be someone else here, not me. I can promise you that. The second is this. If your honor looks at the record, the seven years it took for these re-exams to reach you is not because of anything that Apple did during the re-exams. I didn't suggest it was. That's not the point, though. But here is the substantive answer to your question. In the Fairchild opinion, the predicate of the Fairchild opinion is that if certiorari is available, then it's not final. And what the Fairchild court said in this circumstance, in this circumstance, it's not available, so it's final. But the underlying principle, Judge Prost, to go to your question, of Fairchild is if certiorari is available, that means that all appeals have been terminated. Remember what Fairchild does is it cites Betcher as stating the principle. It then, but you can't, Fairchild didn't say that. They did not grant it, because we have the facts in Fairchild which are just like this. So if your principle were to apply in Fairchild and the court agrees with you, then it would have not said that. It would have said, well, they're still gonna have a second bite on the second cert, but they didn't say that. Well, you're on two things. One is, and I can't, I mean, as I said before, the precise issue wasn't raised. The second is, to go to Judge Rainier's question, the Fairchild opinion said it was critical that the remand didn't involve any issues involving the patent or the patent claims. Yeah, it was like this case, though, wasn't it? Ours, this remand did involve the patent claims on impringement. And that statement in Fairchild makes good sense. If you accept, and I'm not saying that you have to. And what were the facts in Fairchild? How were they different? What was remanded? What was remanded had nothing to do with the patents at all. And the opinion said it was critical. And, Your Honor, if you go back and just take my. Well, wait, time out. The opinion said, critically, these proceedings are unrelated to the 972 patent. And then it says, and here, power integration does not suggest, nor is there any reason to believe that any unresolved issues on remand would have any effect on the now final 972 patent validity determinations. And isn't this statute about final decision on validity? That's what the statute says. So shouldn't those words have meaning as opposed to final judgment on the case? Your Honor, they do have meaning. And that sentence actually makes perfectly good common sense for this reason. If a remand doesn't involve the patent claims at all, then the likelihood that anything occurs on remand. But that's not what it says. It actually doesn't have any effect on the now final patent validity. There was no what likelihood was that the validity conclusions by our court were going to be dislodged in any way, shape, or form. Your Honor, actually, respectfully, if the claims go back down to be retried and there are new arguments being made in the infringement portion of the case that might deal with it, you could have a motion to set aside a validity determination even after your mandate issues. What Fairchild is saying and what the opinion says is, look, it's important that nothing's going back down on these patents. And all I was trying to say, Your Honor, is in answer to your question, there's a difference between Fairchild in this case because in this case, something was going back down. I'm well beyond my time. Let me just say this on the merits very quickly. The brief that was filed by Vernetics doesn't reach the merits until page 57. It's about a lot of other things other than the merits. And that's consistent with the argument you've heard today. The idea that the board was a Dave Novo fact finder is simply wrong. As the CFR says in this court, says it in Cree, in this case, unlike the first appeal, there is an examiner. An examiner reached the decision. The board's job is to sit as a quasi-appellate body, take the arguments that are made, and address those arguments. And that's precisely what it did. Thank you. Good morning, Your Honors. Theodore Foster for Appley Cisco Systems. May it please the court. I'd like to address first the question about claim 47 that Mr. Kinnaird raised. Vernetics, in its appeal brief to the board, did not raise any separate arguments regarding claim 47. All they did was refer back to their arguments about claim 36 and recite the language of the claim itself. And as the board's rules provide, merely reciting the claim language is not a separate argument. And so merely putting the claim language under a heading is insufficient. Regarding claim 48, claim 48 merely recites that the claimed indication, which is the same indication as claim 36, is more specifically found in a particular domain name. And so it's merely refining and specifying in more detail where the indication is found in the claim domain name service system. Since the domain names in claim 36 are stored in the domain name service system, finding it more specifically in claim 48 in the domain name itself provides the sufficient teaching of the claimed indication and supports affirmance. And then I'd also like to take up the question of the ACLs, where I want to point out that Vernetics, throughout the re-examination, highlighted that limiting access to naming services, which is what the ACLs do, that that is a distinguishing feature. You can see the examiner summarizing Vernetics' arguments about that in the appendix at page 4223. If there are no questions. Thank you. Thank you. We'll give you three minutes to read that. Your Honor, very quickly, Fairchild did decide the rule that a final decision on patent validity creates a stop, even if there's no final judgment, even if it didn't address all the arguments. You cannot impeach precedent of this court by pointing to an unaddressed floor statement in the House. Furthermore, that floor statement said, when all appeals have terminated, the appeals that are listed in 315B are the appeals to the PCAB and the Federal Circuit. Certiorari is not an appeal. It is a petition for discretionary review. Certiorari has always been different from appeal. And finally, he doesn't address, when he says conflict with Betcher, he doesn't address page 645 with the MPEP, when they're talking about 315. So what is the basis for differentiating? Let's assume we're under Fairchild, and whether you agree or disagree with Fairchild, what argument it should have. It says the time for certiorari has run. The first instance. So what kind of policy or legal argument do you make that you only get one chance for certiorari, but not the other, the second chance? Well, the policy argument, and the legislative history is clear on this, is that you don't want to have continual hack harassing litigation once you've gone to final decision in one of the forums. And that's the policy. And this is kind of- There's no dispute that Apple would have had the ability to raise it on cert. I mean, for a lot of good reasons, one doesn't go for cert. Peace me. But so did power integrations in Fairchild. They have the exact same review rights. And I would point that nothing in the question, both of them were remanded on issues that could not possibly affect final patent validity. There is no daylight. Fairchild, power integrations won, right? No, power integrations lost on the invalidity case. So Fairchild moved. So power integrations is equivalent to Apple, and they're on all fours. And both of them had the same right after final judgment. They won on infringement. They won on infringement, right? It didn't go back on that patent. They're not going to appeal. Power integration is not going to appeal. It's winning. Well, power integrations had the same right to appeal the validity decision to the Supreme Court that Apple. That's the key. So it's the validity decision, equally final in both cases. And I would point out that Boettcher makes clear on 645 when it's discussing 316. It relies on the MPEPS. It says, appeals terminate when the mandate is issued. And it says the same rules in 317. And you can't have deference. Even the ambiguous part of the MPEP that they refer to can't trump the regulations that I referred to, and that he doesn't even address. And the question that he makes about findings, it's absolutely true that the board, even though it is limited to the record and review of the examiner's decision, is the de novo finder of fact. PTO has said so. 94 USPQ second 1072. We decide anew the factual issues that are contested. And In re Young, this court also talked about that. And that's why this court reviews the board's factual decisions for substantial evidence. You cannot find in this stunningly opaque decision factual findings on why these two alternatives constitute the DNSS. They didn't address claim differentiation. They didn't address our arguments that the examiner misunderstood the in the clear embodiment. There's nothing that says, here's what we find to be the claimed indication. So it has to go back. And we did address the merits where there was a finding on authentication. And there, they did not show authentication of the query. And I would just point to the court. It means, for example, in the 504 Appendix 199-200, which is a patent column 54 to 51-10, talks about the secure, the. I think we have your. Okay. Thank you. Thank you. Thanks, I'm sorry to make this significant. The next.